# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **JEREMY HUGHES,**  *Plaintiff*,  v.  **POLAR CORPORATION (MA),**  *Defendant.* | **CIVIL ACTION NO.**  **5:16-cv-00072-TES** |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Polar Corporation's Motion for Summary Judgment [Doc. 58]. For the reasons stated below, the Court **GRANTS** Defendant's motion.

## Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmovant and a fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering this motion, "the evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Id.* at 255. However, the Court need not

draw "all possible inferences" in favor of the nonmovant. *Horn v. United Parcel Servs., Inc.*, 433 F. App'x 788, 796 (11th Cir. 2011).

The movant "bears the initial burden of informing the district court of the basis for its motion[] and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (internal quotation omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant "to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Jones*, 683 F.3d at 1292 (quoting *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2012)).

## **Background**

Defendant Polar Corp. employed Plaintiff Jeremy Hughes as a forklift operator in its shipping department until his termination on February 25, 2015. [Doc. 60-1, at 1:1]. On January 23, 2018, Plaintiff experienced chest pains during the workday and asked Mike Smith, his supervisor, if he could leave early to seek treatment but Smith denied his request. [*Id.*]. Several days later, Plaintiff again experienced chest pain, so he informed Smith that he would not be reporting to work that day and sought treatment from Dorminy Medical Center. [*Id.* at 2:2]. Plaintiff maintains that he suffered a heart attack,

2

although Defendant disputes this diagnosis.[1] [Doc. 58-1, at ¶ 6]. After running some tests, Plaintiff's doctors at Dorminy Medical Center transferred him to Phoebe Putney Memorial Hospital in Albany, Georgia for further treatment. [Doc. 60-1, at 2:3]. Plaintiff alleges that the doctors at Phoebe Putney found a 99% blockage in his left, main artery prompting them to clear the blockage and place a stent in the artery. [*Id.* at 2:4].

Plaintiff's doctors released him on January 28, 2015 to seek further care from Dr. Khanja Mohammed, a cardiologist, who instructed Plaintiff not to return to work until February 9, 2015 and scheduled a follow-up appointment for February 26, 2015. [*Id.* at 10:15]. On January 29, 2015, Plaintiff went to Defendant's facility and spoke with Jim Robert, Defendant's Operations Manager, about Plaintiff's condition and his expected return date. [*Id.* at 3:5]. During this conversation, Defendant requested short-term disability for the duration of his absence but never requested Family and Medical Leave Act ("FMLA") leave. [*Id.* at 3:7]. Instead, Defendant decided to advance Plaintiff vacation time that had not yet accrued for the days he missed while he was seeking care and gave Plaintiff short-term disability for the balance of his recovery. [*Id.*].

---

[1] The Court recognizes that Plaintiff apparently failed to respond to Defendant's Request for Admissions despite warnings from the Court that a failure to respond would result in the Court deeming the facts as admitted due to the lack of a response. *See* [Doc. 62, at 3 & Doc. 39, at 4]. However, Plaintiff submitted a statement of facts with his Opposition to Defendant's Motion for Summary Judgment [Doc. 60-1] that contradicts the facts the Court threatened to deem admitted. For purposes of this Order only, the Court analyzes Defendant's Motion for Summary Judgment using the facts as described in Plaintiff's Opposition to Defendant's Motion for Summary [Doc. 60-1] because, regardless of which set of facts are used, the outcome is the same: the Defendant prevails.

On February 6, 2015, Plaintiff again spoke with Mr. Robert about his return to work. [*Id.* at 3:6]. Robert told Plaintiff to load trucks using only the fork lift, not to do any heavy lifting, and that Defendant would provide Plaintiff with an assistant if he encountered a situation that required him to exceed his lifting restriction. [*Id.*].

Plaintiff returned to work on February 9, 2015 and continued working in the shipping department until, on February 17, 2015, Defendant asked Plaintiff to stop working in the shipping department and move to the receiving department. [*Id.* at 3-4:7]. Plaintiff initially complied but found that he occasionally exceeded his lifting restrictions when spillage occurred while unloading trucks in the receiving department. [*Id.*]. Plaintiff informed Smith that he exceeded his lifting restrictions cleaning up spillage in the receiving department, so Smith directed Plaintiff to return to his normal duties in the shipping department. [*Id.*].

On February 24, 2015, Defendant directed Plaintiff to return to the receiving department but Plaintiff objected because he was concerned he would exceed his lifting restrictions if spillage occurred. [*Id.* at 5:9]. Plaintiff attempted to contact Smith to voice his concerns but Smith did not answer Plaintiff's calls. [*Id.* at 5:10]. Instead, Smith responded once via text message, only generally discussing Plaintiff's concerns, and then did not communicate with Plaintiff thereafter. [*Id.*]. Plaintiff, without Defendant's permission, left work and returned home but attempted to contact Smith and Robert throughout the day. [*Id.* at 5-6:11]. In the afternoon, Robert called Plaintiff and told him

he was suspended for three days while human resources investigated his decision to leave work early that day. [*Id.* at 6:12]. Robert contacted Plaintiff again on February 25, 2015 and informed him that he had been terminated. [*Id.*].

Plaintiff initiated this action on February 16, 2016, asserting claims for violations of the FMLA 29 U.S.C. § 2601, et seq. and the Americans with Disabilities Act 42 U.S.C. § 12112 ("ADA"). With respect to his FMLA claims, Plaintiff first alleges that Defendant interfered with his rights under FMLA by failing to appropriately notify Plaintiff of his FMLA rights. *See* [Doc. 60-1, at 18 & Doc. 1, at ¶ 36]. Next, Plaintiff alleges that Defendant retaliated against him "for the exercise of protected conduct under the [FMLA]" when Defendant terminated his employment. [Doc. 1, at ¶ 42]. In his ADA claims, Plaintiff alleges that Defendant failed to provide reasonable accommodations for his disability and discriminated against him because of his disability. [*Id.* at ¶ 50; Doc. 60-1, at 18]. Initially, Plaintiff was represented by counsel but now proceeds *pro se*. *See* [Doc. 20].

## Discussion

I. <u>Interference with FMLA Rights</u>

Defendant is entitled to summary judgment on Plaintiff's interference with FMLA rights claim because he failed to provide any evidence that Defendant denied him an FMLA benefit. *See Martin v. Brevard Cty. Pub. Schs.*, 543 F.3d 1261, 1267 (11th Cir. 2008) ("To prove FMLA interference, an employee must demonstrate that he was denied a benefit to which he was entitled under the FMLA.").

Construing his submissions most generously, Plaintiff seems to allege that Defendant interfered with his FMLA rights by failing to provide him with individualized notice of his right to take FMLA leave. However, under 29 C.F.R. § 825.300, Defendant was obligated to provide individualized eligibility notice in only two circumstances: either "[w]hen an employee requests FMLA leave or when the employer acquires knowledge that an employee's leave may be for an FMLA–qualifying reason." Neither circumstance is present in this case. Plaintiff never requested FMLA leave—or leave of any kind—nor did Defendant "acquire[] knowledge that [Plaintiff's] leave [was] for an FMLA-qualifying reason" because Plaintiff never took leave of any kind. Accordingly, Defendant was not required to provide individualized notice to Plaintiff of his right to take FMLA leave.

Even if Defendant was required to provide individualized notice of eligibility, Plaintiff failed to provide any evidence that he was prejudiced by this lack of notice. In the absence of such evidence, Plaintiff's claim of FMLA interference cannot survive summary judgment. *See Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847, 849 (11th Cir. 2009) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)) (holding that summary judgment is appropriate where a plaintiff fails to articulate a harm from a violation of FMLA). *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999) ("Even if the defendants have committed certain technical infractions under the FMLA, plaintiff may not recover in the absence of damages."); *Drago v. Jenne*,

6

453 F.3d 1301, 1307 (11th Cir. 2006) (requiring proof of harm in FMLA interference claim even where there was a clear technical violation of FMLA).

## II. <u>Remaining Claims</u>

Defendant is also entitled to summary judgment on Plaintiff's FMLA retaliation claim and his ADA claims. Each of these claims is analyzed under the *McDonnell Douglas* burden shifting framework because Plaintiff relies on circumstantial evidence alone to support these claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-02 (1973); *see also Martin*, 543 F.3d at 1268 (applying *McDonnell Douglas* framework to FMLA retaliation claim); *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999) (applying *McDonnell Douglas* framework to ADA discrimination claims). Under this framework, Plaintiff must first establish a *prima facie* case for each of his claims and, if he does, a presumption of discrimination arises in his favor. *McDonnell Douglas Corp.*, 411 U.S. at 801-02. Defendant can rebut this presumption by providing a non-discriminatory explanation for its conduct after which, Plaintiff can show that the explanation was merely pretext for Defendant's true discriminatory motive. *Id.* at 802.

   *1.     FMLA Retaliation*

Plaintiff has not established a prima facie case of retaliation because he did not engage in statutorily protected activity. "[A]n employee claiming FMLA retaliation must show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity."

7

*Martin*, 543 F.3d at 1268 (citing *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000)). Here, Plaintiff concedes that he did not take or even request FMLA leave; therefore, Plaintiff did not engage in statutorily protected activity.

Even if Plaintiff had established a prima facie case of retaliation, Defendant would still be entitled to summary judgment because Defendant offered a non-retaliatory justification for terminating Plaintiff that he failed to rebut. Specifically, Defendant argued that it terminated Plaintiff because on February 24, 2015, he left work early and without permission. [Doc. 57, at 10]. In support of this argument, Defendant submitted James Roberts's affidavit in which he stated "walking off of the job was a terminable offense and that the company had a consistent practice and policy of terminating employees for walking off of the job." [Doc. 58-10, at ¶ 7].

Because Defendant provided a non-retaliatory reason for terminating Plaintiff, the burden shifted back to Plaintiff to provide some evidence that the proffered justification was mere pretext. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) ("[A] plaintiff cannot recast the [non-retaliatory] reason but must meet it head on and rebut it."). Plaintiff failed to do this because he does not dispute that he left work early, that this violated Defendant's employment policies, or that it is Defendant's consistent practice to terminate employees who violate this policy.[2] In the absence of such rebuttal

---

[2] The Court recognizes that in some circumstances temporal proximity between the protected activity and the adverse employment action may be sufficient evidence of pretext. *See, e.g., Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). However, this case is distinguishable from *Hurlbert*

evidence, Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

### 2. *ADA Discrimination and Failure to Accommodate*

Defendant is also entitled to summary judgment on Plaintiff's ADA discrimination and failure to accommodate claims because Defendant did not provide any evidence that he was disabled. To establish a prima facie case for either of these claims, Plaintiff must provide evidence that he was disabled. *See Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255-56 (11th Cir. 2007) (recognizing that disability is an element in prima facie case of ADA discrimination); 42 U.S.C. § 12112 (b)(5)(A) (recognizing failure to accommodate as form of discrimination).

To establish his disability, Plaintiff must provide some evidence that he has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The Court assumes without deciding that Plaintiff's heart condition amounts to an *impairment* under 42 U.S.C. § 12102(1)(A) but Plaintiff offered no evidence—or even alleged—that his impairment substantially limited one or more major life activities. 29 C.F.R. § 1630.2(j)(1)(11) ("Not every impairment will constitute a disability within the meaning of [the ADA]."). Instead, Plaintiff merely asserted in his

---

because Defendant has consistently maintained that it terminated Plaintiff for leaving work early and Plaintiff does not dispute that other violations of this policy have been met with termination. *See* [Doc. 58-10, at ¶ 7]. To allow Plaintiff to rely solely on temporal proximity in the face of overwhelming evidence that his termination was the result of his violation of workplace policy would entirely insulate an employee from termination in the temporally proximate window following their protected activity.

complaint that he "suffered from a disability as defined by the ADA" without offering even an affidavit outlining his substantial limitations. [Doc. 1, at ¶ 14].

Even if Plaintiff had established a prima facie case of disability discrimination, Defendant offered unrebutted evidence of a legitimate, non-discriminatory justification for its decision to terminate Plaintiff. As discussed above, Defendant rebutted the presumption of discrimination by offering evidence that they terminated Plaintiff because he left the workplace without permission and this evidence was unrebutted. Accordingly, Plaintiff's claim of ADA discrimination fails under the *McDonnell Douglas* burden shifting framework.

For the reasons discussed above, Defendant is entitled to summary judgment on Plaintiff's claims. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 58].

**IT IS SO ORDERED** this 12th day of September, 2018.

<u>**S/ Tilman E. Self, III**</u>
TILMAN E. SELF, III, JUDGE
UNITED STATES DISTRICT COURT